UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDRE JONES,

                           Plaintiff,

     -v-

WESTCHESTER COUNTY; SGT. ODDES
ANDREWS; OFFICER BRUCE ALLEN; OFFICER
KARL BEST; EMERGENCY RESPONSE TEAM,

                       Defendants.

Case No. 14-CV-9803 (KMK)

OPINION & ORDER

---

Appearances:

Andre Jones
Attica, NY
*Pro Se Plaintiff*

Nicholas S. DeCicco, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Pro se Plaintiff Andre Jones ("Plaintiff") brings this Action pursuant to 42 U.S.C. § 1983

against Westchester County (the "County"), Sergeant Oddes Andrews ("Andrews"), Officer

Bruce Allen ("Allen"), and Officer Karl Best ("Best") (collectively, "Defendants"), alleging that

Defendants engaged in conduct that violated Plaintiff's rights under the Eighth Amendment.

Before the Court is Defendants' Motion To Dismiss the Second Amended Complaint (the

"Motion").  (Dkt. No. 30.)[1]  For the following reasons, Defendants' Motion is granted in part and

denied in part.

---

[1] Plaintiff also sues the County of Westchester in the form of the "Emergency Response
Team."  However, the Emergency Response Team is a unit within the Westchester Department

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint and are taken as true for the purposes of resolving the instant Motion.

On May 27, 2014, during "the 3/11 shift" at the Westchester County Jail, a "physical dispute" arose "between [Plaintiff] and an inmate/detainee" which "resulted in a Signal (1) alarm" and the summoning of the Emergency Response Team ("ERT").  (Second Am. Compl. ("SAC") ¶ 1 (Dkt. No. 15).)  Following the dispute, Plaintiff was placed in "mechanical restraints" and taken first to the medical department for treatment of a gash resulting from the altercation, and then to the facility's booking area to be strip searched.  (SAC ¶¶ 2–4.)  During the escort to the booking area, Plaintiff was "held" by Best and Allen, two members of the ERT, and was "shackled and hand cuffed" with "mechanical restraints" restricting his movement.  (*Id.* ¶¶ 2, 4–5.)  As Best, Allen, and Plaintiff approached another ERT officer ahead, the officer called out, "'wet floor[,]' clear enough for everyone in the area to hear."  (*Id* ¶ 4.)  Instead of slowing down or changing direction, Best and Allen "snicker[ed]" and "decided to speed walk [Plaintiff] over the wet floor."  (*Id.* ¶ 5.)  Due to his restricted range of movement, Plaintiff began to lose his balance, and, realizing this, Best and Allen "let lose [sic] of their grasp allowing

---

of Corrections, which is itself an administrative arm of the County, and thus is not a separate, suable entity.  *See Adilovic v. Cty. of Westchester*, No. 08-CV-10971, 2011 WL 2893101, at *1 n.1 (S.D.N.Y. July 14, 2011) ("The County of Westchester is also sued as . . . the Westchester County Department of Correction Emergency Service Unit, but the latter . . . defendant[] [is] not [a] legal entit[y] distinct from the County of Westchester."); *Arnold v. Westchester Cty.*, No. 09-CV-3727, 2010 WL 3397375, at *8 n.5 (S.D.N.Y. Apr. 16, 2010) ("While [the plaintiff] has named the 'Emergency Response Team' as a defendant, the team as a whole is plainly not a suable entity." (citation omitted)), *adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010).  Any claims against the Emergency Response Team are therefore dismissed with prejudice.

[Plaintiff] to stumble and fall on the wet floor." (*Id.*)  Andrews witnessed and did not prevent the alleged incident. (*Id.* ¶ 7.)[2]

As a result of the fall, Plaintiff "suffered pain and injuries to [his] left knee, left hip[,] and lower back." (*Id.* ¶ 6.)  Plaintiff "could not walk," and Best, Allen, and Andrews "knew [Plaintiff] was in severe pain," yet they still "forced [him] to stand and continue the walk to the booking search area, causing [him] more pain." (*Id.*)  Upon arriving at the booking area, Plaintiff underwent a strip search, during which "the pain from [his] injuries became unbearable," and Plaintiff asked to be seen by the medical staff. (*Id.* ¶ 8.)  Plaintiff eventually saw the medical staff five to 10 minutes after he requested to see them, and was given an ice pack for the swelling to his knee and hip area. (*Id.* ¶¶ 8–9.)  He was then forced by Officer Robertson to "hop step/walk all the way to [his] housing block[] with [his] hands cuffed." (*Id.* ¶ 10.)  Plaintiff was unable to sleep until he was given pain medication to manage his injuries, (*id.*), and he spent the rest of his time at the jail "in great pain," until he was "given an MRI that resulted in . . . getting physical therapy," (*id.* ¶ 11).  Plaintiff also alleges that he is now "paranoid[] and afraid" when in the presence of prison staff while handcuffed or shackled. (*Id.* § V.)

B.  Procedural History

Plaintiff commenced this Action against the County and two John Doe officers on December 8, 2014. (Dkt. No. 1.)  On March 27, 2015, the Court directed Plaintiff to submit an amended complaint that more clearly articulated Plaintiff's purported grounds for recovery, (*see* Dkt. No. 6), which Plaintiff filed on June 30, 2015, (*see* Dkt. No. 11).  The Amended Complaint named Westchester County Jail, Sgt. Andrews, John Doe #1, John Doe #2, and ERT as

---

[2] The Second Amended Complaint does not indicate whether Andrews was the ERT officer who warned Best and Allen of the wet floor.

defendants.  (*Id.* at 1.)  On July 14, 2015, the Court issued an Order of Service that also directed

the Westchester County Attorney to aid Plaintiff in ascertaining the identities of the John Doe

defendants and to inform Plaintiff of their identities.  (*See* Dkt. No. 13 at 2.)  Upon learning their

identities, Plaintiff filed the instant Second Amended Complaint, on September 24, 2015.  (*See*

SAC.)  Defendants filed the instant Motion, and accompanying papers, on February 11, 2016.

(*See* Dkt. Nos. 30–32.)  On February 25, 2016, Plaintiff filed a letter asking the Court to provide

additional time for him to serve Best and Allen, which the Court memo endorsed indicating that

the letter would be considered as part of Plaintiff's opposition to Defendants' Motion.  (*See* Dkt.

No. 35.)  Plaintiff did not file any additional opposition papers.[3]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that, although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration in original) (citation omitted).  Instead, the Supreme Court has emphasized that

---

[3] Defendants filed a letter with the Court on September 2, 2016 correctly noting that Plaintiff failed to file any additional opposition briefing and asking the Court to grant their Motion "as unopposed in both fact and law."  (*See* Dkt. No. 37.)  The Court declines to do so, as "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law."  *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000); *see also Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010) (noting that a district court is "equipped to make a determination on the merits" when considering an unopposed motion to dismiss); *accord France v. Cty. of Westchester*, No. 12-CV-5576, 2016 WL 1270259, at *3 n.5 (S.D.N.Y. Mar. 30, 2016) (resolving an "unanswered [m]otion on the merits, without input from [the] [p]laintiff").  Indeed, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."  *McCall*, 232 F.3d at 323.

"[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*,

and that "once a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only

enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff

has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must

be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether

a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F.

Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

 Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

    B.  Analysis

Defendants move to dismiss Plaintiff's Second Amended Complaint on a number of grounds.  First, Defendants argue that Plaintiff's failure to timely obtain and serve a summons and complaint on certain Defendants, and his failure to serve the operative complaint on the remaining Defendants, warrants dismissal under Federal Rules of Civil Procedure 4(m) and 41(b).  (*See* Mem. of Law in Supp. of Cty. Defs.' Mot. To Dismiss ("Defs.' Mem.") 6–9 (Dkt. No. 31).)  Second, Defendants contend that Plaintiff has failed to state a claim upon which relief may be granted.  (*See id.* at 10–20.)  Lastly, Defendants assert that Best, Allen, and Andrews are protected by qualified immunity.  (*See id.* at 20.)  The Court considers these arguments in turn.

    1.  Failure to Serve and Failure to Prosecute

Defendants are correct that Allen and Best have not been served in this case. (*See generally* Dkt.)  But the Court does not agree that Plaintiff's failure warrants dismissal of his case.

a.  Rule 4(m)

Rule 4(m) requires a plaintiff to effect proper service on the defendant within 90 days of

the filing of the complaint.  Fed. R. Civ. P. 4(m).[4]  If a plaintiff fails to do so, the Court "must

dismiss the action without prejudice against [the] defendant or order that service be made within

a specified time."  *Id.*  If the plaintiff has demonstrated good cause for a failure to effect service,

the court *must* extend the time to effect service.  *Id.*; *see also Blessinger v. United States*, 174

F.R.D. 29, 31 (E.D.N.Y. 1997) (noting if a plaintiff demonstrates good cause, "the extension is

mandatory").  To determine whether a plaintiff has demonstrated good cause, "[c]ourts generally

consider three factors . . . :  (1) whether the delay resulted from inadvertence or whether a

reasonable effort to effect service has occurred, (2) prejudice to the defendant, and (3) whether

the plaintiff has moved for an enlargement of time to effect service under Rule 6(b) of the

Federal Rules of Civil Procedure."  *Echevarria v. Dep't of Corr. Servs.*, 48 F. Supp. 2d 388, 392

(S.D.N.Y. 1999).

The Court finds that Plaintiff can demonstrate good cause for his failure to timely serve

Best and Allen.  The Court's July 14, 2015 Order of Service is of particular importance here, as

it outlined Plaintiff's responsibilities with respect to service in this case.  The Order directs the

Westchester County Attorney to identify the John Doe defendants and inform Plaintiff of their

identities, and instructed Plaintiff to thereafter file a second amended complaint naming the John

---

[4] Although not relevant for purposes of this Opinion, the Court notes that, at the time Plaintiff filed this Action (and each subsequent amended complaint), the former 120-day period provided for by Rule 4(m) was in effect.  *See, e.g.*, *Rosado-Acha v. Red Bull Gmbh*, No. 15-CV-7620, 2016 WL 3636672, at *9 (S.D.N.Y. June 29, 2016) ("[U]nder Federal Rule of Civil Procedure 4(m), prior to its December 2015 amendment, a plaintiff was required to serve a defendant with a summons and a copy of the complaint within 120 days after the complaint was filed.").

Doe defendants.  (Dkt. No. 13 at 2–3.)[5]  The Order added that "[o]nce Plaintiff has filed a second amended complaint, the Clerk of Court will, if necessary, send instructions to Plaintiff to effect service on the named John Doe Defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure."  (*Id.* at 3.)  However, the docket bears no indication that any such instructions (or U.S. Marshals Service Process Receipt and Return forms) were ever sent to Plaintiff after he filed the Second Amended Complaint.  (*See generally* Dkt.)  Where pro se plaintiffs reasonably rely on various arms of the Court during the service process but those actors fail to carry out their duties, courts have found "good cause" for service failures.  *See, e.g.*, *Byrd v. Stone*, 94 F.3d 217, 220 (6th Cir. 1996) (finding good cause under Rule 4(m) where the clerk of court and the Marshals Service "fail[ed] . . . to accomplish their respective duties to issue and serve process for [the] plaintiff proceeding in forma pauperis"); *McCalmann v. Partners in Care*, No. 01-CV-5844, 2002 WL 856465, *1 (S.D.N.Y. Apr. 25, 2002) ("The failure of the Marshals Service to properly effect service of process constitutes 'good cause' within the meaning of Rule 4(m)." (some internal quotation marks omitted)); *Morrison v. N.Y. State Div. for Youth Children & Family Serv.*, No. 98-CV-643, 2000 WL 532762, at *2 (N.D.N.Y. Apr. 25, 2000) (finding good cause where delay in serving process "was a result of an apparent oversight by the Clerk of the Court's Office").  Moreover, the unserved Defendants do not cite any prejudice that has resulted from their failure to be served.  Indeed, in cases like this, where all defendants are employed by a common employer (Westchester County Department of Corrections), it is unclear what prejudice unserved defendants may suffer.  *See, e.g.*, *Tabb v. Rosemary*, No. 12-CV-1520, 2014 WL

---

[5] The Court required Plaintiff to do so within 30 days of receiving the information, which he did.  (*See* Dkt. No. 14 (letter from Westchester County Attorney to Plaintiff identifying John Doe defendants, dated September 11, 2015); Dkt. No. 15 (SAC received by Pro Se Office on September 24, 2015).)

240266, at *7 (S.D.N.Y. Jan. 22, 2014) (finding "little if any prejudice to the . . . as-yet unserved defendants occasioned by the delay in serving them," in part because the defendants "are all DOC employees and will presumably be represented by common counsel"). Ultimately, Plaintiff can demonstrate good cause, and thus the Court must extend Plaintiff's time to serve Defendants. *See, e.g.*, *Castro v. Manhattan E. Suite Hotel*, No. 01-CV-7912, 2002 WL 426221, at *2 (S.D.N.Y. Mar. 19, 2002) (denying motion to dismiss on service grounds in part because "the delay in service [was] at least in part attributable to communications difficulties involving the [c]ourt and [the] [d]efendant ha[d] not been prejudiced by any delays that may have resulted from [the] [p]laintiff's attempts to effectuate proper service").[6]

Even if the above circumstances did not establish "good cause," Rule 4(m) allows the court, in its discretion, to extend the time for service. *See Henderson v. United States*, 517 U.S. 654, 662 (1996) (finding that "courts have been accorded discretion" to grant an extension "even if there is no good cause shown" (internal quotation marks omitted)); *Zapata v. City of N.Y.*, 502 F.3d 192, 193 (2d Cir. 2007) ("[D]istrict courts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause under certain circumstances."). Such a discretionary extension would be warranted here.

In determining whether an extension is warranted in the absence of good cause, the court should consider: "(1) whether the applicable statute of limitations would bar the refiled action;

---

[6] The Court also notes that, although Plaintiff waited until after Defendants filed their Motion To Dismiss, he did submit a request for an extension of time to serve Best and Allen once he was alerted to the deficiency. (*See* Dkt. No. 34.) *Cf. Castro v. City of N.Y.*, No. 05-CV-593, 2007 WL 3071857, at *8 (S.D.N.Y. Oct. 10, 2007) (noting, in the context of consideration of a discretionary extension of time to serve, that "when [the] defendants finally filed a motion . . . alluding to the service errors, [the] plaintiff—now on notice that service was inadequate—responded by seeking an extension to correct the technical errors"), *adopted by* 2007 WL 3224748 (S.D.N.Y. Nov. 1, 2007).

(2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of [the] plaintiff's request for relief from the provision." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 598 (E.D.N.Y. 2013) (internal quotation marks omitted).

The Court acknowledges that factors one and three weigh against an extension, as Plaintiff's § 1983 claims are subject to a three-year statute of limitations, *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004), that will not expire until May 2017, and there is no evidence that either Best or Allen attempted to conceal the defect in service.[7]

However, factors two and four, coupled with Plaintiff's pro se status, weigh strongly in favor of an extension.  First, Defendants do not even attempt to claim any prejudice.  (*See* Defs.' Mem. 6–10.)  And "while there is no competent evidence to support a conclusion that [Best or Allen] had *actual* notice of the claims against them, defense counsel . . . has engaged in motion practice on their behalf."  *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013) (emphasis added); *see also Castro v. City of N.Y.*, No. 05-CV-593, 2007 WL 3071857, at *8 (S.D.N.Y. Oct. 10, 2007) (finding that notice weighed in favor of extension where the plaintiff served the New York City Law Department with multiple complaints intended for the

---

[7] The Court notes that some courts have interpreted the first factor differently and have held that the fact that the statute of limitations has not run *supports* granting the extension of time.  *See, e.g.*, *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 109 (S.D.N.Y. 2000) ("If the statute of limitations has not expired then a discretionary extension of time to serve would be warranted because no useful purpose would be served by dismissing the complaint[;] . . . [p]resumably[,] the only result of a dismissal would be that the . . . [p]laintiffs would refile their complaint, resulting in a waste of judicial resources.").  This is obviously in tension with the practice of most courts to "consider[] the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis."  *Carroll v. Certified Moving & Storage, Co.*, No. 04-CV-4446, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) (internal quotation marks omitted).

individual defendants because those defendants "necessarily had actual or constructive notice of both the lawsuit and [the] plaintiff's claims"), *adopted by* 2007 WL 3224748 (S.D.N.Y. Nov. 1, 2007); *cf. Harrison v. New York*, 95 F. Supp. 3d 293, 319 (E.D.N.Y 2015) (finding that the defendants had actual notice of claims asserted where the defendants "ultimately received [the] [p]laintiff's pleadings and in fact filed the instant motions to dismiss" (internal quotation marks omitted)); *Tabb*, 2014 WL 240266, at *7 (granting discretionary extension of time to serve where, among other things, "although [the individual defendants] were never formally served, they were on notice of the charges against them . . . and their employer, DOC, was at all times aware of it"); *Jordan*, 928 F. Supp. 2d at 599 (allowing pro se plaintiff an extension to serve the defendants in part because the defendants had actual notice "and in fact filed the instant motions to dismiss based on those pleadings"); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 67 (S.D.N.Y. 2010) (granting a discretionary extension when the defendant had notice and "d[id] not claim to have been prejudiced by [the plaintiff's] delay in effecting valid service"); *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 111 (S.D.N.Y. 2000) (finding that the "fact that [the defendant] had actual notice . . . militates against a finding of prejudice since the 'core function' of service is to supply notice 'in a manner and at a time that afford[s] the defendant a fair opportunity to answer the complaint and present defenses and objections'" (quoting *Henderson* 517 U.S. at 672)).  Although the Motion and Memorandum were submitted by defense counsel "on behalf of" Best and Allen in their official capacities only, (*see* Defs.' Mem. 1), the Court cannot identify any material way in which the Motion would have differed if it had expressly been brought on their behalf individually as well.[8]

---

[8] Moreover, based on the fact that the Motion was expressly filed on their behalf, one can draw the very reasonable inference that Best and Allen actually knew of the claims brought against them.

Ultimately, the Court finds that Rule 4(m) does not require dismissal of Plaintiff's action.[9]

### b.  Rule 41(b)

Federal Rule of Civil Procedure 41(b) allows the involuntary dismissal of an action for failure to prosecute.  "[I]nvoluntary dismissal . . . is . . . one of the harshest sanctions at a trial court's disposal, since it . . . denies [the] plaintiff his day in court.  As a result, it is reserved for use only in the most extreme circumstances."  *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 250–51 (2d Cir. 2004).  "[C]ourts should be especially hesitant to dismiss for procedural deficiencies where, as here, the failure is by a pro se litigant."  *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).  The Second Circuit has provided five non-dispositive factors to consider in deciding whether to dismiss for failure to prosecute pursuant to Rule 41(b):  (1) whether the plaintiff's failure to prosecute has caused a significant delay, (2) whether the plaintiff had notice that further delay would result in dismissal, (3) the likelihood that the defendant will be prejudiced by further delay, (4) a balancing of the need to alleviate court calendar congestion against the plaintiff's right to an opportunity for his day in court, and (5) the efficacy of lesser sanctions.  *Drake*, 375 F.3d at 254.

These factors weigh decidedly in Plaintiff's favor.  First, Plaintiff's failure to serve all

---

[9] Defendants also assert that Plaintiff improperly served the County and Andrews with the Amended Complaint, not the Second Amended Complaint.  (Defs.' Mem. 9.)  Discretionary extension of the time to serve these two Defendants with the Second Amended Complaint is warranted for the same reasons above.  Indeed, the above analysis applies with greater force for these two Defendants: the *only* substantive difference between the Amended Complaint and the Second Amended Complaint was the substitution of Best and Allen for the two John Doe defendants.  Clearly, the County and Andrews had actual notice of the claims at issue in this case and there is no way they have suffered any prejudice as a result of Plaintiff's failure to serve the Second Amended Complaint, given that they have moved to dismiss the Second Amended Complaint.

Defendants has not resulted in a significant delay in the proceedings; indeed, the case has moved ahead despite the failure, as it has not prevented Defendants from filing the instant Motion. Second, and perhaps most importantly, Plaintiff did not receive a clear warning that a failure to serve Best and Allen would result in dismissal of his claim.  Although the Order of Service made reference to the possibility of involuntary dismissal, the warning was tied to Plaintiff's potential failure either to (1) return the USM-285 forms for the then-named Defendants within 30 days (Dkt. No. 13 at 3), or (2) ensure completed service of the then-named Defendants within 120 days of the date the summonses were issued (*id.* at 4), two obligations that Plaintiff timely fulfilled.[10]  The Order contained no warning with respect to Plaintiff's responsibility to serve the still-to-be-identified John Doe defendants.  "A warning to a pro se litigant must be . . . specific before it will constitute a warning for [a failure to prosecute] analysis."  *Lucas*, 84 F.3d at 535. The Order of Service did not contain a specific warning sufficient to satisfy the notice requirements of a Rule 41(b) dismissal, particularly for a pro se plaintiff.  Third, as noted above, Defendants have shown no prejudice as a result of Plaintiff's delay.  Fourth, the Court finds that Plaintiff's delay has not caused significant court calendar congestion as the delay has had minimal, if any, effect on the Court's calendar.  Fifth, the Court believes that a lesser sanction, namely a warning, is adequate in the present situation.

Ultimately, although the "special solicitude afforded to pro se civil rights litigants does not give them license to violate the Federal Rules of Civil Procedure," *Self v. LaValley*, No. 10-CV-1463, 2013 WL 1294448, at *3 (N.D.N.Y. Mar. 27, 2013) (italics omitted), the Court has an obligation "to make reasonable allowances to protect pro se litigants from inadvertent forfeiture

---

[10] The Order of Service also warned that the Court may dismiss the action for failure to prosecute if Plaintiff's address changed and Plaintiff failed to notify the Court.  (Dkt. No. 13 at 4.)

of important rights because of their lack of legal training," *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (italics omitted). Moreover, the Second Circuit has a "clearly expressed preference that litigation disputes be resolved on the merits." *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 346 (S.D.N.Y. 1996); *see also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Accordingly, Plaintiff will be provided additional time to effect service of the Second Amended Complaint on all Defendants. The Court will issue an Order of Service simultaneously with the filing of this Opinion that will govern Plaintiff's service responsibilities. Failure to complete service as required by the Order of Service could result in dismissal of the case.

### 2. Rule 8

Defendants next move to dismiss on the ground that the Second Amended Complaint fails to comply with Federal Rule of Civil Procedure 8 in that it does not provide Defendants with fair notice of the claims asserted. (*See* Defs.' Mem. 10–11.) As relevant here, Rule 8 provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct," *id.* at 8(d)(1).

The "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) ("The key to Rule 8(a)'s requirements is whether adequate notice is given."), and if the Second Amended Complaint "fails to comply with th[is] requirement[], the . . . [C]ourt has the power . . . to dismiss [it]," *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of

res judicata, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons*, 49 F.3d at 86 (internal quotation marks omitted); *see also Clifton v. Hra Nyc Govt*, No. 16-CV-1753, 2016 WL 4203486, at *2 (E.D.N.Y. Aug. 9, 2016) ("[The plaintiff] must provide facts sufficient to allow each defendant to have a fair understanding of what [the plaintiff] is complaining about and to know whether there is a legal basis for recovery."). Dismissal for failure to comply with Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons*, 49 F.3d at 86 (internal quotation marks omitted); *see also Guichardo v. Officer Keefrey*, No. 15-CV-6478, 2015 WL 7575904, at *2 (E.D.N.Y. Nov. 24, 2015) (same).

There can be no question that the Second Amended Complaint "disclose[s] sufficient information to permit . . . [D]efendant[s] to have a fair understanding of what . . . [P]laintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (internal quotation marks omitted). The Second Amended Complaint contains a succinct retelling of a specific sequence of events—lasting no more than a few hours—and expressly ascribes various acts to specific individual Defendants. *See Simmons*, 49 F.3d at 87 (finding "it clear that [the plaintiff's] amended complaint gave [the] defendants fair notice of the claims asserted" where, despite lacking some details, the amended complaint "indicated that all of the events complained of took place in January 1992 . . . [and] in many instances ascribed specific acts to specific individual defendants"). The Court can identify nothing confusing, ambiguous, vague, or otherwise unintelligible about Plaintiff's rather straightforward factual allegations. *Cf., e.g.*, *Kalter v. Hartford Ins. Co.*, 24 F. Supp. 3d 230, 235 (E.D.N.Y. 2014) (dismissing complaint pursuant to Rule 8(a) where the complaint contained "only broad, vague[,] and generalized allegations"). Indeed, the Court has seen its fair share of

15

complaints that "consist[ed] of a labrynthian prolixity of unrelated and vituperative charges that defied comprehension," *Diaz v. City Univ. of N.Y.*, No. 13-CV-2038, 2014 WL 10417871, at *8 (S.D.N.Y. Nov. 10, 2014) (internal quotation marks omitted), *adopted in part by* 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015), or were comprised of "rambling, conclusory, possibly delusional allegations [that were] so vague as to make it impossible for [the] defendants to frame a response," *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *3 (E.D.N.Y. Feb. 7, 2012) (internal quotation marks omitted).  The Second Amended Complaint is not one of those complaints.[11]

Further, it appears that Defendants' only notice-related objection to the Second Amended Complaint is that it does not separately delineate the precise causes of action for which Plaintiff is seeking to recover.  (*See* Defs.' Mem. 11 ("[I]t is unclear what specific causes of action Plaintiff is alleging against the County Defendants, causing . . . Defendants to have to speculate, for the purposes of this motion, as to the causes of action presumed against them.").)  But failure to delineate causes of action is an insufficient reason to dismiss a pro se plaintiff's complaint.  As the Second Circuit has noted, "the Rules do not require a plaintiff to plead the legal theory . . . underlying his claim," which is "especially true in the case of pro se litigants, who cannot be expected to know all of the legal theories on which they might ultimately recover." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (italics omitted); *see also Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n.4 (2d Cir. 1980) ("Generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the

---

[11] Defendants even appear to concede that Plaintiff has sufficiently put them on notice of the conduct complained of when they characterize the Second Amended Complaint as "nothing more than a mere recounting of an event that took place on or about May 27, 2014."  (Defs.' Mem. 11.)

legal theory or theories and statutory basis supporting the claim."); *Allyn v. Rockland Cty.*, No. 12-CV-5022, 2012 WL 5992735, at *2–3 (S.D.N.Y. Nov. 8, 2012) (rejecting argument that the complaint failed to adequately notify defendants of the nature of the complaint where the plaintiffs "fail[ed] to state the statutory and constitutional bases for their allegations").  It bears noting that dismissal of a pro se plaintiff's complaint under Rule 8 for a failure to properly delineate specific causes of action would render meaningless the Second Circuit's instruction that courts ought to liberally construe pro se plaintiffs' pleadings, and that, "[i]n so doing, the court's imagination should be limited only by [the plaintiff's] factual allegations, not by the legal claims set out in his pleadings."  *Phillips*, 408 F.3d at 130.[12]  Accordingly, the Second Amended Complaint complies with Rule 8 and Defendants' Motion is denied insofar as it seeks dismissal on that ground.

### 3.  Eighth Amendment Claims

The Court construes Plaintiff's Second Amended Complaint to raise possible Eighth Amendment claims for excessive force and deliberate indifference to medical needs.  The Court considers each in turn.

### a.  Excessive Force

### i.  Applicable Law

The Second Amended Complaint can be interpreted as asserting an excessive force claim against Best, Allen, and Andrews—specifically, that Plaintiff was handled with excessive force when, after being warned of a wet floor, Best and Allen "snicker[ed]" and "speed walk[ed]" a

---

[12] Moreover, although Plaintiff's Second Amended Complaint does not expressly refer to what "claims" or "causes of action" he has brought, it does include a section entitled "Relief," that states that he seeks damages for injuries caused by "the deliberate indifference to [his] safety and well-being," and the Defendants' "cruel[]" actions.  (SAC § V.)  That Plaintiff's claims are brought under the Eighth Amendment is in no way shrouded in mystery.

handcuffed and shackled Plaintiff over the wet floor and then intentionally released their hold on

him as he slipped, thereby causing Plaintiff's injuries to his left knee, left hip, and lower back,

(SAC ¶¶ 4–6), and when, despite knowing that Plaintiff was in severe pain and could not walk

after his fall, Best, Allen, and Andrews "still forced [Plaintiff] to stand and continue the walk to

the booking search area, causing [him] more pain," (*id.* ¶ 6).[13]

As a claim brought under the Eighth Amendment, an excessive force claim requires "both

an objective examination of the conduct's effect and a subjective inquiry into the defendant[s']

motive for the conduct." *France v. Cty. of Westchester*, No. 12-CV-5576, 2016 WL 1270259, at

*7 (S.D.N.Y. Mar. 30, 2016).

The objective element focuses on the harm done in light of "contemporary standards of

decency," and the analysis is "context specific," *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir.

1999) (internal quotation marks omitted), asking whether "the deprivation alleged is sufficiently

serious, or harmful enough, to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d

101, 105 (2d Cir. 1993) (internal quotation marks omitted).  "Some degree of injury is ordinarily

required to state a claim of excessive use of force in violation of the Eighth Amendment," *Taylor

v. N.Y. Dep't of Corr.*, No. 10-CV-3819, 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012)

(alterations and internal quotation marks omitted), though an inmate "need not prove 'significant

injury' to make out an excessive force claim," *Griffin*, 193 F.3d at 92.  Nevertheless, "a de

minimis use of force will rarely suffice to state a constitutional claim."  *Romano*, 998 F.2d at 105

(italics omitted); *see also Griffin*, 193 F.3d at 91 ("Not every push or shove, even if it may later

---

[13] The Court notes that Plaintiff also alleges that "[E]scort [O]fficer []Robertson[] . . . forced [Plaintiff] to hop step/walk all the way to [his] housing block, with [his] hands cuffed."  (SAC ¶ 10.)  However, Plaintiff has not named Officer Robertson as a Defendant in this Action, and none of the individual Defendants is alleged to be personally involved if this alleged conduct.

seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." (internal quotation marks omitted)).

The subjective element requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (some internal quotations omitted); *see also Vail v. Fischer*, No. 12-CV-1718, 2013 WL 5406637, at *5 (N.D.N.Y. Sept. 25, 2013) (noting that an inmate must show, "subjectively, that the defendant acted wantonly and in bad faith"). A plaintiff must allege, for example, that prison officials used force "maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (internal quotation marks omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (noting that whether the force was applied maliciously and sadistically or in a good-faith effort to maintain or restore discipline is "[t]he core judicial inquiry" for an excessive force claim (internal quotation marks omitted)).[14]

---

[14] As with any claim brought under § 1983, Plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that Plaintiff has not sufficiently alleged that Allen and Best were acting under color of state law, (*see* Defs.' Mem. 14), but such an argument is plainly meritless. Allen and Best, "as . . . corrections officer[s], [were] acting under color of state law," *Mendez v. Walker*, 110 F. Supp. 2d 209, 213 (W.D.N.Y. 2000), when they transported Plaintiff to booking, *see, e.g.*, *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (finding "the state action requirement [to be] easily satisfied" where the defendants were "actively employed by DOCS" "at the time of the alleged actions"); *Carolina v. Murray*, No. 96-CV-1802, 1997 WL 317319, at *1 (D. Conn. May 23, 1997) ("Because the defendants are correctional officers and officials, any actions they may have taken were performed under color of state law.").

ii.  Analysis

Addressing the subjective element first, the Court concludes that, taking Plaintiff's allegations as true and drawing all reasonable inferences from them, Plaintiff has sufficiently alleged that Best, Allen, and Andrews acted with the subjective state of mind necessary to state an excessive force claim.  After learning that a wet floor lay ahead, Best and Allen allegedly laughed, deliberately chose to "speed walk" Plaintiff across the dangerous floor, and, just as a shackled Plaintiff began to lose his balance, they let go of their grip so that he would fall to the ground with no means of breaking his fall.  (SAC ¶¶ 4–5.)  These facts reasonably allow one to infer that Best and Allen acted with the goal of causing Plaintiff to fall and injure himself.  Indeed, the Second Amended Complaint suggests no legitimate penological purpose for Defendants' actions.  Although the ERT escort that followed Plaintiff's altercation with another inmate was a legitimate penological exercise, the allegedly intentional decision to increase the speed of the escort while directly traversing the slippery floor, and to release Plaintiff as he began to stumble with no means with which to brace for the fall amounts to conduct undertaken by Best and Allen "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The same is true for Plaintiff's allegations that Best, Allen, and Andrews—conscious of the fact that Plaintiff was still shackled, in "severe pain," and unable to walk—forced Plaintiff to continue his walk to booking with, as alleged, no additional supports.  (SAC ¶ 6.)

The objective inquiry presents a closer call.  As noted earlier, the objective element can be satisfied "even if the victim does not suffer serious, or significant injury, as long as the amount of force used is not de minimis."  *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016) (italics and internal quotation marks omitted).  While Plaintiff does not specifically allege the full extent

of his injuries, general injuries may nonetheless constitute excessive force, as "[a] prison official's malicious or sadistic use of force . . . always violates contemporary standards of decency . . . whether or not significant injury is evident." *Chambliss v. Rosini*, 808 F. Supp. 2d 658, 667 (S.D.N.Y. 2011) (internal quotation marks omitted) (citing *Wright*, 554 F.3d at 268–69); *see also Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").  Moreover, the fact that Plaintiff did "suffer pain and injures to [his] left knee, left hip and lower back" as a result of Allen's and Best's release of Plaintiff, and pain that was beyond "severe" as a result of the forced walk, (SAC ¶ 6), distinguishes this case from others in which the lack of injury has justified dismissal of excessive force claims, *see, e.g.*, *Boddie*, 105 F.3d at 862 (finding the plaintiff's allegations that he was "bumped, grabbed, elbowed, and pushed" by the defendants did not rise to a level of constitutional significance because the plaintiff did "not maintain that he experienced any pain or injury as a result of the physical contact"); *Chavis v. Chappius*, No. 06-CV-543, 2015 WL 1472117, at *6 (W.D.N.Y. Mar. 31, 2015) (dismissing an Eighth Amendment claim where the complaint "does not allege any physical injury that occurred as a result of the [defendant's act]"); *Munlyn v. Pietrie*, No. 13-CV-6170, 2014 WL 3695488, at *4 (W.D.N.Y. July 24, 2014) (dismissing an Eighth Amendment claim where the complaint failed to allege "that [the] [p]laintiff suffered harm or physical injury").

Furthermore, Plaintiff's injuries and the treatment sought imply a use of force that was more than de minimis.  *See Alston v. Bellerose*, No. 12-CV-147, 2015 WL 4487973, at *11 (D. Conn. July 23, 2015) (finding allegations that the defendants' conduct "caused [the] [p]laintiff pain, injury[,] and unnecessary suffering . . . imply that [the] [d]efendants' use of force was more

than de minimis" (italics omitted)); *Caldwell v. Winston*, No. 09-CV-580, 2010 WL 4163034, at

*5 (N.D.N.Y. July 23, 2010) (finding objective test satisfied where the plaintiff "allege[d] that he

was bleeding as a result of the assault and also that he ha[d] suffered substantial periods of pain

in his neck and sharp pain in his hands"), *adopted sub nom. Caldwell v. Gettmann*, 2010 WL

3430036 (N.D.N.Y. Aug. 27, 2010).  That Plaintiff was allegedly in "severe" and "unbearable"

pain and eventually sought "an MRI that resulted in . . . physical therapy," and "medication

[because he] could not sleep because [he] was in so much pain," (SAC ¶¶ 6, 8, 10–11), reinforces

the inference that the amount of force used was excessive, *see D'Attore v. Cucharella*, No. 12-

CV-9, 2012 WL 5601406, at *6 (N.D.N.Y. Oct. 3, 2012) (holding that "[t]he severity of the

[p]laintiff's injuries," for which "he sought medical attention" and received treatment, "supports

the reasonable inference that the amount of force used by [the defendant] was excessive"),

*adopted by* 2012 WL 5600374 (N.D.N.Y. Nov. 15, 2012); *Vail*, 2013 WL 5406637, at *6 ("The

very nature of the injuries . . . resulting from these actions are strong indications of wanton and

malicious conduct.").[15]

    The Court finds Plaintiff's allegations regarding his fall to be analogous to situations in

which correctional officers or police officers have deliberately dropped restrained inmates or

arrestees, which courts have recognized can serve as the basis of an excessive force claim.  *See*

*Goodwine v. Nat'l R.R. Passenger Corp.*, No. 12-CV-3882, 2014 WL 795756, at *2, *9

(E.D.N.Y. Feb. 27, 2014) (denying summary judgment where the plaintiff contended that, while

---

[15] The Court notes that Plaintiff may confront a causation issue as he pursues this claim. Plaintiff is attributing his injuries to the slip and fall, but he was in a serious physical altercation just moments earlier.  However, Plaintiff alleges that he suffered only a facial cut as a result of the earlier altercation.  (SAC ¶ 3.)  As such, accepting Plaintiff's allegations and drawing the most favorable inferences from them, Plaintiff has plausibly alleged that the "[severe] pain and injuries to [Plaintiff's] left knee, left hip[,] and lower back" resulted from the fall, not the altercation.  (*Id.* ¶ 6.)

handcuffed, officers picked him up and "intentionally dropped him face-first to the ground from a height of three feet, causing [him] to sustain injuries"); *Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 26 (E.D.N.Y. 2012) (denying the defendants' motion for summary judgment where the defendants "dropped [the plaintiff] on his lower back with his handcuffs on, causing severe pain"); *Tobias v. Cty. of Putnam*, 191 F. Supp. 2d 364, 378 (S.D.N.Y. 2002) (holding, in the summary judgment context, that the facts "could form the basis of a claim that the intentional dropping of [the plaintiff] would constitute excessive force in violation of the Fourth Amendment"). *But see Davis v. Callaway*, No. 05-CV-127, 2007 WL 1079988, at *8–10 (D. Conn. Apr. 9, 2007) (granting the defendants' summary judgment motion where the plaintiff claimed he was "picked up [18] to [24] inches off the ground . . . and then let go to fall, face first, onto the asphalt" because the plaintiff's injuries "were minimal to the point of being non-existent" and because there was "no evidence that it was anything more than an accident").[16]

---

[16] An analogy can also be drawn between Plaintiff's allegations that Best, Allen, and Andrews forced Plaintiff to continue to the booking area despite his severe pain and situations in which a defendant has dragged an injured plaintiff. Indeed, although Plaintiff does not use the word "dragged," he does allege that he "could not walk" after the fall, (SAC ¶ 6), which, taken as true, would mean that his escort to booking after his fall likely approximated a dragging. Depending on the context and resulting injuries, an excessive force claim can be founded upon an allegation that the defendants dragged an injured plaintiff. *Compare Nicholas v. City of Binghamton*, No. 10-CV-1565, 2012 WL 3261409, at *10 (N.D.N.Y. Aug. 8, 2012) (denying the defendant's motion for summary judgment because issues of fact remained as to whether the defendant police officer employed excessive force when he removed the plaintiff from a vehicle and "dragg[ed] [the plaintiff] across her front yard," resulting in bruises), *and Lambert v. City of Santa Rosa*, No. 05-CV-2931, 2005 WL 3096575, at *5 (N.D. Cal. Nov. 15, 2005) (denying motion to dismiss an excessive force claim where a plaintiff with a broken leg was dragged across the living room floor), *with D'Attore v. City of N.Y.*, No. 10-CV-6646, 2013 WL 1180395, at *5–6 (S.D.N.Y. Mar. 15, 2013) (granting summary judgment for the defendant on an excessive force claim where the plaintiff alleged that he was "pushed 'recklessly' down the hall," in part because "there [was] no evidence that [the plaintiff] suffered anything other than de minim[i]s injury as a result of being pushed"), *relief from judgment denied*, 2014 WL 173482 (S.D.N.Y. Jan. 8, 2014); *Rosario v. Fischer*, No. 11-CV-4617, 2012 WL 4044901, at *10 (S.D.N.Y. Aug. 28, 2012) (holding that the plaintiff failed to allege an excessive force claim where he was "dragged from his cell into a corridor" but did not allege that he "suffered any

Of course, the Court is mindful that not every push or shove violates the Eighth Amendment. *Griffin*, 193 F.3d at 91. However, the Court also recognizes that the use of force by prison officials "to cause harm maliciously and sadistically" always violates contemporary standards of decency. *Wright*, 554 F.3d at 268–69; *see also Green v. Morse*, No. 00-CV-6533, 2005 WL 1490301, at *3 (W.D.N.Y. June 23, 2005) ("[E]ven if the harm inflicted is not significant, if plaintiff can show malicious intent then the objective prong will almost always be satisfied."). As alleged, the conduct of Best, Allen, and Andrews amounts to an entirely gratuitous use of force for the purpose of causing harm. Combined with Plaintiff's allegations of severe pain that ultimately resulted in the need for physical therapy and medication, Plaintiff has, at this stage, sufficiently stated an excessive force claim against Best, Allen, and Andrews.[17]

---

injury or pain during the . . . incident" aside from a general allegation in the complaint that he suffered "pain and suffering" (internal quotation marks omitted)), *adopted by* 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012).

[17] The Court rejects Defendants' argument that Plaintiff has failed to adequately allege the personal involvement of Andrews in any constitutional violation. (*See* Defs.' Mem. 17–18.) Plaintiff has adequately alleged Andrews' involvement in the conduct underlying Plaintiff's excessive force claim through his allegation that "Andrews knew [Plaintiff] was in severe pain . . . [but] still forced [Plaintiff] to stand and continue the walk to the booking search area." (SAC ¶ 6.) As such, Plaintiff has adequately alleged that Andrews "participated directly in the alleged constitutional violation," which is, of course, sufficient to demonstrate personal involvement. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Even if Andrews did not physically transport an injured Plaintiff (or order Best and Allen to do so), to the extent that the transport constitutes a use of excessive force, Andrews can also be held liable on the grounds that "[a] corrections officer who observes another officer applying excessive force to an inmate is liable under § 1983 if the officer had a realistic opportunity to prevent the harm but failed to do so." *Bowen v. Patrick*, No. 11-CV-4799, 2012 WL 3743409, at *7 (S.D.N.Y. Aug. 29, 2012) (internal quotation marks omitted), *adopted by* 2012 WL 4320537 (S.D.N.Y. Sept. 20, 2012). At this stage, Plaintiff's allegations with respect to his post-fall transport to the booking area allow for the reasonable inference that the transport took long enough that Andrews would have had a realistic opportunity to intervene to stop it. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) (distinguishing between "three blows . . . struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them," and the "subsequent dragging" of the plaintiff across the floor, for which a reasonable factfinder could find that the defendant had a realistic opportunity to intervene).

<u>b.  Deliberate Indifference to Medical Needs</u>

<u>i.  Applicable Law</u>

"The Eighth Amendment 'forbids deliberate indifference to serious medical needs of prisoners.'"  *Spavone v. N.Y. State Dep't of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "There are two elements to a claim of deliberate indifference to a serious medical condition."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  "The first requirement is objective:  the alleged deprivation of adequate medical care must be sufficiently serious."  *Spavone*, 719 F.3d at 138 (internal quotation marks omitted).  Analyzing this objective requirement itself requires two inquiries.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  The second inquiry "asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Id.* at 280.  To meet the objective requirement, "the inmate must show that the conditions, either

---

To be clear, Plaintiff has adequately alleged Andrews' personal involvement in the second alleged use of excessive force, the forced walk to the booking area, and not the first alleged use of excessive force, the intentional decision to speed walk Plaintiff across a wet floor and then let go of him as he fell.  With respect to the fall, Plaintiff alleges only that Andrews was nearby, and that he was Best's and Allen's supervisor.  But "[a]n individual cannot be held liable for damages under § 1983 merely because he held a high position of authority."  *Henrius v. Cty. of Nassau*, No. 13-CV-1192, 2016 WL 1171598, at *5 (E.D.N.Y. Mar. 24, 2016) (internal quotation marks omitted); *see also, e.g.*, *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisory liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." (italics omitted)).  Moreover, even drawing all inferences in Plaintiff's favor, his fall, from beginning to end, could not have lasted more than a few seconds, and thus, as a matter of law, Andrews did not have a reasonable opportunity to intervene.  *See, e.g.*, *O'Neill*, 839 F.2d at 11–12; *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 327 (S.D.N.Y. 2006) (granting motion to dismiss claims against officers alleged to have observed another defendant "st[and] [the plaintiff] to his feet by his collar and then slam[] him against the wall" because "as a matter of law," the officers "did not have a reasonable opportunity to intervene in such a rapid series of events"), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).

alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Nevertheless, the Second Circuit has "presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (citing *Brock*, 315 F.3d at 162) (internal quotation marks omitted).

"The second requirement is subjective:  the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138.  Under the second prong, the question is whether the defendants "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and that [they were] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (alterations and internal quotation marks omitted).  In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted).  "Deliberate indifference is a mental state equivalent to subjective recklessness" and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal quotation marks omitted).  In contrast, mere negligence is not enough to state a claim for deliberate indifference. *See Walker*, 717 F.3d at 125; *Vail v. City of N.Y.*, 68 F. Supp. 3d 412,

424 (S.D.N.Y. 2014) (same).  Moreover, "mere disagreement over the proper treatment does not

create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the

fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment

violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Banks v. Annucci*,

48 F. Supp. 3d 394, 408 (N.D.N.Y. 2014) (same).

### ii.  Analysis

Construing the Second Amended Complaint liberally, Plaintiff complains of two alleged

instances of deliberate indifference in the aftermath of his fall:  (1) the five to ten minutes that

elapsed between his "request[] [to] be seen by medical" and when he was actually seen, (SAC

¶ 8), and (2) suffering in "great pain before [he] was given an MRI that resulted in [him] getting

physical therapy," (*id.* ¶ 11).  The Court finds that none of Plaintiff's allegations rises to the level

of deliberate indifference.

First, "[a]lthough a delay in providing necessary medical care may in some cases

constitute deliberate indifference, the Second Circuit has reserved such a classification for cases

in which, for example, officials ignored a life-threatening and fast-degenerating condition for

three days, or delayed major surgery over two years." *Tatum v. City of N.Y.*, No. 06-CV-4290,

2009 WL 124881, at *5 (S.D.N.Y. Jan. 20, 2009) (citation and internal quotation marks omitted),

*reconsideration denied*, 2009 WL 976840 (S.D.N.Y. Apr. 9, 2009); *see also Ramos v. Artuz*, No.

00-CV-149, 2003 WL 342347, at *10 (S.D.N.Y. Feb. 14, 2003) (same).  Plaintiff's alleged

injuries were far from life-threatening and his wait for treatment was far from long; he alleges

general "severe pain" and "injuries" to his knee, hip, and back and a five to ten-minute wait

before he was seen by the medical staff.  (SAC ¶¶ 6, 8.)  "As a matter of law, a wait this brief

cannot constitute deliberate indifference to an injury such as Plaintiff's." *Ravenell v. Van der*

*Steeg*, No. 05-CV-4042, 2007 WL 765716, at *4 (S.D.N.Y. Mar. 14, 2007) (finding that a 15–

20-minute delay in treatment of fractured finger could not amount to deliberate indifference);

*see also Johnson v. City of N.Y*, No. 12-CV-8265, 2014 WL 5393181, at *6 (S.D.N.Y. Oct. 21,

2014) ("Even assuming that [the] plaintiff suffered a hairline fracture to his ankle, he has

provided no evidence that the four and one-half hour delay between his arrest and his being seen

at [the hospital] resulted in any worsening of his condition or resulted in the exacerbation of his

injury."), *adopted by* 2014 WL 6455162 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 633 F. App'x 37 (2d

Cir. 2016); *Benavides v. Grier*, No. 09-CV-8600, 2011 WL 43521, at *2 (S.D.N.Y. Jan. 6, 2011)

(holding that a plaintiff who alleged that the defendant took "several minutes" to respond to the

plaintiff's "knee injury" failed to state a claim for deliberate indifference (internal quotation

marks omitted)); *Tatum*, 2009 WL 124881, at *2, *5–6 (dismissing the plaintiff's claim where he

alleged that he complained of "pain in his jaw and lower back" and the defendant waited

"[a]pproximately [10] minutes" before taking the plaintiff to the infirmary for treatment).[18]

Next, Plaintiff's allegation that he "spent the rest of [his] time in great pain before [he]

was given an MRI that resulted in . . . getting physical therapy," (SAC ¶ 11), likewise fails to

state a deliberate indifference claim.  First, the Second Amended Complaint is not specific as to

both the severity of Plaintiff's injury and the length of his wait before receiving an MRI.

Accordingly, Plaintiff has not adequately alleged that Defendants' "fail[ure] to provide an

MRI . . . threaten[ed] to produce death or degeneration, or produce extreme pain."  *Williamson v.*

*Goord*, No. 02-CV-521, 2006 WL 1977438, at *21 (N.D.N.Y. July 11, 2006) (emphasis

---

[18] While "[a] short delay may be sufficient if the plaintiff can show intentional efforts on
the part of [the] defendants to delay access to medical care at a time when the plaintiff was in
extreme pain," *Benavides*, 2011 WL 43521, at *2 (alterations and internal quotation marks
omitted), the Second Amended Complaint does not contain any allegations that Defendants
intentionally delayed access to medical care.

omitted); *cf. Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.").  Moreover, Plaintiff cannot satisfy the subjective element of a deliberate indifference claim as he provides no allegations that any Defendant—at this time subsequent to his initial fall and treatment—was aware that he was in "great pain" or even that he wished to have an MRI or other medical treatment.  Accordingly, no Defendant can be said to have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious . . . harm [would] result."  *Salahuddin*, 467 F.3d at 280; *see also Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) ("The mere fact that an inmate feels that he did not receive adequate attention . . . does not constitute deliberate indifference."); *cf. Lloyd v. Lee*, 570 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (finding that the plaintiff adequately alleged the subjective element of a deliberate indifference claim where he alleged that "almost nine months passed from the time an MRI was requested until he received one," and that he "regularly visited sick call and met with the physician defendants to discuss the delay in receiving an MRI and the delay in remedying his medical condition").

Accordingly, Plaintiff's deliberate indifference claims are dismissed without prejudice.[19]

_____

[19] To the extent Plaintiff's deliberate indifference claim can be construed as a claim challenging the wet floor as an inhumane condition of confinement, *see, e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("Whether one characterizes the treatment received by the prisoner as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard . . . ." (alteration and internal quotation marks omitted)), he still fails to state a claim.  Courts in the Second Circuit have consistently held that wet floors cannot serve as the basis of a conditions of confinement claim. *See, e.g.*, *Martin v. City of N.Y.*, No. 11-CV-600, 2012 WL 1392648, at *9 (S.D.N.Y. Apr. 20, 2012) ("Courts in th[e] [Second] Circuit agree that bodily injuries sustained from a slip-and-fall

### 4.  Qualified Immunity

Defendants argue that the individual Defendants are entitled to qualified immunity. (Defs.' Mem. 20.)  Because the Court has dismissed all claims except for the excessive force claim, the Court addresses the qualified immunity argument only as it pertains to that claim.

In § 1983 excessive force cases, a claim of qualified immunity is evaluated by inquiring: (1) whether "the facts, taken in the light most favorable to the plaintiff, show a constitutional violation," i.e., whether "the alleged use of excessive force was objectively reasonable," and (2) "whether the constitutional right was clearly established at the time of the constitutional violation," such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) (internal quotation marks omitted).  Because "[i]t is indisputable that freedom from the use of excessive force is a clearly established constitutional right," *Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005); *see also Tracy*, 623 F.3d at 99 n.5 ("[I]t was well established at the time of the underlying altercation that the use of entirely gratuitous force is unreasonable and therefore excessive . . . ."), the issue here is whether it was objectively reasonable for Best and Allen to believe that their acts did not violate Plaintiff's right to be free from the use of excessive force.

---

on a wet floor simply do not rise to the level of a constitutional violation."); *Edwards v. City of N.Y.*, No. 08-CV-5787, 2009 WL 2596595, at *2–3 (S.D.N.Y. Aug. 24, 2009) ("Courts . . . have routinely found that . . . allegations of wet floor conditions that caused a prisoner to slip and fall[] at most support a finding of simple negligence, and therefore do not support a claim that . . . the Eighth Amendment . . . was violated . . . even where . . . the plaintiff also alleges that the individual defendants had notice of the wet condition but failed to address it."); *Jennings v. Horn*, No. 05-CV-9435, 2007 WL 2265574, at *5 (S.D.N.Y. Aug. 7, 2007) ("[S]lippery prison floors, at best, pose a claim of negligence, which is not actionable under the United States Constitution."); *Sylla v. City of N.Y.*, No. 04-CV-5692, 2005 WL 3336460, at *3 (E.D.N.Y. Dec. 8, 2005) ("Courts have regularly held that a wet or slippery floor does not pose an objectively excessive risk to prisoners.").

That inquiry, however, "turns on factual questions that cannot be resolved at this stage of the proceedings." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002); *see also Woodhouse v. City of Mount Vernon*, No. 13-CV-189, 2016 WL 354896, at *6 (S.D.N.Y. Jan. 27, 2016) ("The claim may not be dismissed on qualified immunity grounds because [the plaintiff] sufficiently alleged a claim of excessive force and the right to be free from excessive force is clearly established."); *Maloney v. Cty. of Nassau*, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) ("Because this defense necessarily involves a fact-specific inquiry, it is generally premature to address the defense of qualified immunity in a motion to dismiss." (alterations and internal quotation marks omitted)).  The Court, therefore, will not dismiss on qualified immunity grounds at this time.

### 5.  Monell Liability

Lastly, Defendants argue that the Second Amended Complaint fails to satisfy the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), such that all claims against the County and the individual Defendants in their official capacities must be dismissed.  (*See* Defs.' Mem. 18–20.)

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)).  Rather, for a plaintiff to prevail on a § 1983 claim against a municipal employer, he must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691; *see also Hunter v. City of*

31

*N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" (internal quotation marks omitted)); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

 "Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality."  *Tieman*, 2015 WL 1379652,

at *12 (alterations and internal quotation marks omitted); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  There are two circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008).  "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled.").

Plaintiff has not plausibly alleged a *Monell* claim.  While the Second Amended Complaint details an incident that Plaintiff finds objectionable, it does not plead the existence of a municipal policy or custom at all.  "A *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice." *Pittman v. City of N.Y.*, No. 14-CV-4140, 2014 WL 7399308, at

*7 (E.D.N.Y. Dec. 30, 2014); *see also Gordon v. City of N.Y.*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation is unsupported by anything other than the facts of what occurred in his particular case"). Plaintiff here offers nothing more, as the Second Amended Complaint is devoid of facts to support an inference of any County policy, practice, or custom—much less one that is unconstitutional. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); *5 Borough Pawn, LLC v. City of N.Y.*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violates the Federal Constitution").

Nor does Plaintiff assert the existence of a County policymaker responsible for any unconstitutional policy relevant to the causes of action here. *See Pignone v. Vill. of Pelham Manor*, No. 10-CV-2589, 2014 WL 929805, at *4 (S.D.N.Y. Mar. 6, 2014) (noting that "[a] plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal or corporate organization"); *cf. Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 568 (S.D.N.Y. 2012) ("[The] [p]laintiff only alleges that the inspector and assistant inspector issued a notice of violation. Without more, this does not demonstrate that these individuals exercised final policymaking authority.").

Because Plaintiff has failed to present sufficient facts of any policy or custom, the Court dismisses all claims against the County and the individual Defendants in their official capacities.

### III. Conclusion

For the above reasons, the Court denies Defendants' Motion insofar as it seeks dismissal pursuant to Rules 4, 8, and 41, and denies the Motion with respect to Plaintiff's excessive force claim against Best, Allen, and Andrews in their individual capacities. The Motion is granted insofar as Plaintiff's remaining claims are dismissed for failure to state a claim.

However, in light of Plaintiff's pro se status, and because this is the first adjudication of his claims on the merits, Plaintiff's remaining claims are dismissed without prejudice. If Plaintiff wishes to file a Third Amended Complaint addressing the deficiencies in his deliberate indifference claims or his *Monell* claim, Plaintiff must file a Third Amended Complaint within 30 days of the date of this Order.

The Court will issue an Order of Service detailing what Plaintiff must do to effect service on Defendants. Failure to fulfill his obligations as stated in the Order of Service may result in dismissal of the Action for failure to prosecute.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 30.)

SO ORDERED.

DATED:      September 3<u>0</u> , 2016
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

35