UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDRE JONES,

               Plaintiff,

     -against-

WESTCHESTER COUNTY; SGT. ODDES
ANDREWS; OFFICER BRUCE ALLEN;
OFFICER KARL BEST; EMERGENCY
RESPONSE TEAM,

               Defendants.

No. 14-CV-9803 (KMK)

OPINION & ORDER

Appearances:

Andre Jones
Attica, NY
*Pro Se Plaintiff*

Irma Wheatfield Cosgriff, Esq.
Nicholas S. DeCicco, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

     Andre Jones ("Plaintiff") brings this pro se Action, under 42 U.S.C. § 1983, against Sergeant Oddes Andrews ("Andrews"), Officer Bruce Allen ("Allen"), and Officer Karl Best ("Best") (collectively, "Defendants"), in their individual capacities, alleging that Defendants engaged in conduct that violated his rights under the Eighth Amendment.[1]  Before the Court is Defendants' Motion To Dismiss the Second Amended Complaint (the "Motion").  (Dkt. No. 74.) For the following reasons, the Motion is granted.

---

[1] Plaintiff also sues Westchester County and its "Emergency Response Team." The Court dismissed these Defendants on September 30, 2016.  (Dkt. No. 38.)

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint ("SAC") and are taken as true for the purposes of resolving the instant Motion.

Plaintiff was an inmate at the Westchester County Jail (the "Jail").  On May 27, 2014, during "the 3/11 [p.m.] shift" at the Jail, a "physical dispute" arose "between [Plaintiff] and an inmate/detainee which resulted in a signal (1) alarm" and the summoning of the Emergency Response Team ("ERT").  (SAC ¶ 1 (Dkt. No. 15).)  Following the dispute, Plaintiff was placed in "mechanical restraints" and taken to the medical department for treatment for a "deep cut to [his] right eyebrow."  (*Id.* ¶¶ 2–3.)  After receiving treatment, Plaintiff was taken by Allen and Best, two members of the ERT, to the Jail's booking area to be strip-searched.  (*Id.* ¶ 4.)  As Allen and Best escorted Plaintiff, another unnamed ERT officer ahead called out, "'wet floor' clear enough for everyone in the area to hear."  (*Id.*)  Instead of slowing down or changing direction, Allen and Best "snicker[ed]" and "decided to speed walk [Plaintiff] over the wet floor."  (*Id.* ¶ 5.)  Due to his restricted range of movement, Plaintiff began to lose his balance, and, realizing this, Allen and Best "let lo[o]se of their grasp[,] allowing [Plaintiff] to stumble and fall on the wet floor."  (*Id.*)  Andrews, another prison official standing nearby, witnessed but did not prevent the alleged incident.  (*Id.* ¶ 7.)

Plaintiff alleges that, as a result of the fall, he "suffered pain and injuries to [his] left knee, left hip[,] and lower back."  (*Id.* ¶ 6.)  Plaintiff states that he "could not walk," and that Allen, Best, and Andrews "knew [Plaintiff] was in severe pain," yet still "forced [him] to stand and continue the walk to the booking search area, causing [him] more pain."  (*Id.*)  Upon arriving at the booking area, Plaintiff underwent a strip search, during which "the pain from [his] injuries

2

became unbearable," and Plaintiff asked to be seen by the medical staff. (*Id.* ¶ 8.) Plaintiff was seen by medical staff five to ten minutes later and was "immediately given an ice pack for the swelling to [his] knee and hip area." (*Id.* ¶¶ 8–9.) Plaintiff was then forced by another officer, not named as a defendant here, to "hop step/walk all the way to [his] housing block[] with [his] hands cuffed." (*Id.* ¶ 10.) Plaintiff was unable to sleep until he was given pain medication, (*id.*), and he spent the rest of his time at the Jail "in great pain," until he was "given an MRI that resulted in . . . getting physical therapy," (*id.* ¶ 11). Plaintiff also alleges that he is now "paranoid[] and afraid" when in the presence of prison staff while handcuffed or shackled. (*Id.* § V.)

      B.  Procedural History

Plaintiff commenced this Action against Westchester County and two John Doe officers in December 2014. (Dkt. No. 1.) In March 2015, the Court directed Plaintiff to submit an amended complaint that more clearly articulated Plaintiff's purported grounds for recovery. (Dkt. No. 6.) Plaintiff filed his First Amended Complaint in June 2015, naming as Defendants Westchester County Jail, Sgt. Andrews, John Doe #1, John Doe #2, and the ERT. (Dkt. No. 11.) In July 2015, the Court issued an Order dismissing Westchester County Jail and substituting Westchester County, directing service on the named Defendants, and directing the Westchester County Attorney to aid Plaintiff in ascertaining the identities of the John Doe Defendants. (Dkt. No. 13.) Upon learning the identities of Allen and Best, Plaintiff filed the instant Second Amended Complaint on September 24, 2015. (Dkt. No. 15.) Westchester County and Andrews were served with the Second Amended Complaint on October 20, 2015. (Dkt. Nos. 16, 17.) Service does not appear to have been attempted on Allen or Best at that time.

Defendants filed a first motion to dismiss and accompanying papers on February 11, 2016. (Dkt. Nos. 30–32.) On February 25, 2016, Plaintiff filed a letter asking the Court to provide additional time to allow him to serve Allen and Best, (Dkt. No. 34), which the Court granted, (Dkt. No. 35). Plaintiff did not file any additional opposition papers.

On September 30, 2016, the Court denied Defendants' first motion to dismiss in part and granted it in part. (Opinion & Order ("Sept. 26 Op.") (Dkt. No. 38).) In particular, the Court granted the motion to dismiss the deliberate-indifference-to-medical-needs claim and the *Monell* claim against the County and the individual Defendants in their official capacities. (*Id.* at 35.) The Court denied the motion in all other respects. (*Id.*) The Court granted Plaintiff leave to file a third amended complaint by October 30, 2016, and stated that it would issue an Order detailing what Plaintiff had to do to serve Allen and Best. (*Id.*)

Plaintiff did not file a third amended complaint. (*See* Dkt. No. 40, at 1.) On November 11, 2016, the Court issued an Order advising Plaintiff how to serve Defendants and instructing the Clerk of Court to send Plaintiff the forms required to effect service. (*Id.* at 1–2.) Delays in effecting service continued to occur. *See infra* Section II.B.1.c. Allen and Best were ultimately served with the Second Amended Complaint on April 16, 2018. (Dkt. Nos. 70, 71.)

Defendants filed their Answer to the Second Amended Complaint on May 3, 2018, (Dkt. No. 72), and the instant Motion To Dismiss pursuant to Rule 12(c) on May 11, 2018, (Not. of Mot. (Dkt. No. 74); Decl. in Supp. of Mot. (Dkt. No. 75); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 76)). On May 30, 2018, Plaintiff requested an extension of time to respond in order to submit document requests under New York's Freedom of Information Law, (Dkt. No. 79), which the Court denied on June 1, 2018 on grounds that Plaintiff could have submitted such requests "before filing this lawsuit," (Dkt. No. 80). Plaintiff did not file an opposition to the

4

Motion. On October 5, 2018, Defendants filed a letter seeking dismissal for failure to prosecute. (Dkt. No. 81.) On October 10, 2018, the Court issued an Order deeming the Motion fully submitted. (Dkt. No. 83.)

II. Discussion

A. Standard of Review

Defendants move to dismiss under Federal Rule of Civil Procedure 12(c). "In deciding a Rule 12(c) motion, [the Court] employ[s] the same standard applicable to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (alterations and internal quotation marks omitted). The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). The Court must also "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [the complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal

quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

Defendants argue that the Second Amended Complaint should be dismissed for failure to timely serve Allen and Best as required by Federal Rule of Civil Procedure 4(m). (*See* Defs.' Mem. 13–16.)

1. Applicable Law

Rule 4(m) requires a plaintiff to effect proper service on a defendant within 90 days of the filing of the complaint. See Fed. R. Civ. P. 4(m). If a plaintiff fails to do so, the Court "must dismiss the action without prejudice against [the] defendant or order that service be made within a specified time." *Id.* "Rule 4(m) 'applies equally to defendants who were never served and defendants who were served after the [90-day] period had lapsed.'" *Nat'l Union Fire Ins. Co. v. Sun*, No. 93-CV-7170, 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994) (quoting *Geiger v. Allen*, 850 F.2d 330, 332 (7th Cir. 1988)). That is because, "[a]s the *Geiger* court explained, to read the Rule otherwise would make the [90-day] deadline illusory and would allow plaintiffs unlimited time to serve a complaint, unless the court or the unserved defendant (who in many cases will have no notice of the action) happened to notice before [the] plaintiff effectuated service [after] the time limit had elapsed." *Id.*

However, if a plaintiff demonstrates "good cause" for a failure to timely effect service, the Court "must" extend the time to effect service. *Id.* "'Good cause' is generally limited to 'exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [his] control.'" *Barbosa v. City of New York*, No. 16-CV-7340, 2018 WL 4625620, at *2 (S.D.N.Y. Sept. 26, 2018) (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 419 (S.D.N.Y. 2013)). "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) (citations omitted). That is, "[c]ourts generally consider three factors . . . : (1) whether the delay resulted from inadvertence or whether a reasonable effort to effect service has occurred, (2) prejudice to the defendant, and (3) whether the plaintiff has moved for an extension of time to serve." *Nicholas v. Bratton*, No. 15-CV-9592, 2018 WL 1054567, at *1 (S.D.N.Y. Feb. 23, 2018) (citation omitted).

Finally, even if a plaintiff cannot establish good cause, Rule 4(m) allows the Court, in its discretion, to extend the time for service. *See Zapata v. City of N.Y.*, 502 F.3d 192, 193 (2d Cir. 2007) ("[D]istrict courts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause under certain circumstances. . . ."). In determining whether a discretionary extension is warranted, the Court considers: "(1) whether any applicable statute of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether [the] defendant had attempted to conceal the defect in service; and (4) whether [the] defendant would be prejudiced by extending [the] plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66 (citations omitted).

2. The September 2016 Opinion

The Court has addressed Rule 4(m) in this case once before. In its September 2016 Opinion, the Court held that, although Allen and Best were unserved at the time, Plaintiff's failure to serve did not warrant dismissal. (Sept. 2016 Op. 6.) First, the Court held that Plaintiff could establish good cause for his failure to serve. (*Id.* at 7.) Plaintiff had relied to his detriment on a July 2015 Order that indicated he would receive instructions for service, (Dkt. No. 13), after which no instructions or other documents appear to have been sent, (Sept. 2016 Op. 8). Further, Defendants did not argue that they were prejudiced by the failure to serve. (*Id.*) Second, the Court held that, even if Plaintiff could not establish good cause, a discretionary extension of the time to serve was warranted because of Plaintiff's pro se status, because Defendants did not establish prejudice from the delayed service, and because there was no evidence that Allen and Best did not have actual notice of the claims against them. (*Id.* at 9–10.) The Court therefore "provided [Plaintiff] additional time to effect service of the Second Amended Complaint on all Defendants," stated that it would "issue an Order of Service simultaneously with the filing of this Opinion that [would] govern Plaintiff's service responsibilities," and warned that "[f]ailure to complete service as required by the Order of Service could result in dismissal of the case." (*Id.* at 14; *see also id.* at 35 ("The Court will issue an Order of Service detailing what Plaintiff must do to effect service on Defendants. Failure to fulfill his obligations as stated in the Order of Service may result in dismissal of the Action for failure to prosecute.)

3. Post-September 2016 Procedural History

Since the Court's September 2016 Opinion, problems with effecting timely service have persisted. On October 5, 2016, the Court stated that it would "issue the Order of Service governing Plaintiff's service obligations after Plaintiff has filed his Third Amended Complaint,

9

or . . . after his time to do so has expired." (Dkt. No. 39.) Plaintiff did not file a Third Amended Complaint. The Court therefore issued an Order of Service on November 10, 2016, stating:

> To allow Plaintiff . . . to effect service on all Defendants, . . . the Clerk of Court is instructed to send Plaintiff one U.S. Marshals Service Process Receipt and Return form ("USM-285 form") for each Defendant. Within 30 days of the date of this Order, Plaintiff must complete a USM-285 form for each Defendant and return those forms to the Court. If Plaintiff does not wish to use the Marshals Service to effect service, Plaintiff must notify the Court in writing within 30 days . . . . If within 30 days, Plaintiff has not returned the USM-285 forms or requested a summons, under Rule 41(b) of the Federal Rules of Civil Procedure, the Court may dismiss this action for failure to prosecute. Upon receipt of each completed USM-285 form, the Clerk of Court shall issue a summons and deliver to the Marshals Service all of the paperwork necessary for the Marshals Service to effect service upon each Defendant. The Clerk of Court shall serve a copy of this Order and the Second Amended Complaint on the Westchester County Attorney . . . . It is Plaintiff's responsibility to ensure that service is made within 90 days of the date the summons is issued and, if necessary, to request an extension of time for service.

(Dkt. No. 40.) On November 28, 2016, a summons was issued for Allen, Best, and Andrews, but service of the Second Amended Complaint was unsuccessful. (Dkt. Nos. 41, 42, 43.)[2] On February 8, 2017, Defendants filed a letter notifying the Court of the unsuccessful service and requesting an extension of time to file an Answer, (Dkt. No. 45), which the Court granted, (Dkt. No 46).

On March 15, 2017, Defendants filed a letter "not[ing] [that] it is now several weeks past the February 26, 2017 service deadline and there is no record of the remaining defendants [Allen, Best, and Andrews] being served [with the Second Amended Complaint], an extension being requested, or further assistance as to the same being sought from the Plaintiff." (Dkt. No. 47.) The next day, the Court directed Plaintiff to respond to the letter and "indicate whether he intends to serve" Allen, Best, and Andrews with the Second Amended Complaint. (Dkt. No. 48.)

---

[2] However, as noted above, Andrews had been served with the First Amended Complaint on October 20, 2015. (Dkt. No. 17.)

10

Plaintiff did not respond. Seven months later, on October 9, 2017, the Court issued an Order directing Plaintiff to show cause by within a month why the case should not be dismissed for failure to prosecute. (Dkt. No. 49.) Again Plaintiff did not respond. On December 29, 2017, the Court issued a similar Order directing Plaintiff to show cause. (Dkt. No. 51.) On January 11, 2018, the Court received a letter from Plaintiff providing his new address and stating that "the last time [Plaintiff] received any correspondence from the courts or the defendants was March 2017." (Dkt. No. 52.)[3] On January 17, 2018, the Court issued another Order directing Plaintiff to show cause, again warning that dismissal may occur if good cause is not shown, (Dkt. No. 53), and mailed it to Plaintiff's updated address.

On January 19, 2018, the Court received another letter from Plaintiff, sent from his new address, stating:

> On November 15, 2016 I sent all 4 defendants [the] summons and complaint by way of the USM-285. I sent the USM-28[5] forms to the Clerk of the Courts, as I was ordered. The Clerk sent me my copies. The courts should not dismiss this case due to the fact that I followed all of the process that . . . was requested by the courts to the best of my ability. . . . [I] do not completely understand some of the legal process in dealing with this case because I do not have any assistance to help me get the needed documents . . . to comple[te] this case. Also I did not receive the October 19, 2017 order to show cause. The corrections officers did not give me the correspondence letter from the courts. I did not know about said order until I received a letter from the courts filed 12/29/17.

(Dkt. No. 54.) On January 24, 2018, the Court directed Defendants to provide addresses for the unserved Defendants, (Dkt. No. 55), and Defendants responded, (Dkt. No. 56). On February 13, 2018, the Court issued an Order directing service on Allen and Best. (Dkt. No. 59.) Allen and Best were served on April 16, 2018. (Dkt. Nos. 70, 71.)

---

[3] The docket sheet reflects that, between March 2017 and January 2018, all court orders and defense correspondence were mailed to Plaintiff at the most recent address he had provided to the Court. (*See* Letter from Andre Jones to Court (May15, 2015) (Dkt. No. 7) (providing address at Attica Correctional Facility).)

11

4. Application

Defendants argue that this sequence of events — between the Court's September 2016 Opinion and the service of Allen and Best in April 2018 — shows that Plaintiff failed to comply with Rule 4(m)'s requirement that service be effected within 90 days and precludes a showing of good cause. (Defs.' Mem. 13.) The Court agrees. As an initial matter, unlike the situation previously before the Court, (*see* Sept. 2016 Op. 8), Plaintiff cannot establish detrimental reliance on the arms of the Court. Whereas previously "the docket [bore] no indication that" the Court had sent instructions to Plaintiff to effect service, (*id.*), the post-September 2016 docket sheet reflects that the Court's instructions on service and forms necessary to effect service were sent to Plaintiff on November 10, 2016 at his then-current address.

Second, Plaintiff does not appear to have made reasonable efforts to timely serve Allen and Best with the Second Amended Complaint. The Court's November 10, 2016 Order explicitly stated that it is Plaintiff's responsibility to ensure service within 90 days of the issuance of the summons or to request an extension. (Dkt. No. 40.) However, the docket sheet reflects that, while Plaintiff completed a USM-285 form, service was returned unexecuted as to Allen, Best, and Andrews on January 3, 2017. (Dkt. Nos. 41, 42, 43.) Plaintiff took no further action to effect service or otherwise request an extension, despite the Court's issuing four Orders between March 16, 2017 and January 17, 2018 directing Plaintiff to show cause why his case should be dismissed for failure to prosecute and warning him that failure to show cause could lead to dismissal. (Dkt. Nos. 48, 49, 51, 53.) Plaintiff did not respond to these Orders. In addition to these Orders, Plaintiff was notified on three other occasions that Allen and Best were unserved and that Andrews was served only with the First Amended Complaint. (*See* Dkt. Nos. 45, 46, 47.) These notifications did not prompt Plaintiff to respond. Indeed, Plaintiff broke his

silence only in January 2018, (Dkt. No. 52), some fourteen months after the issuance of the November 2016 Order of Service.  Even assuming the truth of Plaintiff's statement that "the last time . . . [he] received any correspondence from the courts or the defendants was March 2017," (*id.*), Plaintiff does not account for the seven Court Orders and other filings sent to Plaintiff between September 2016 and March 2017 notifying him that Defendants remained unserved, (Dkt. Nos. 38, 39, 40, 45, 46, 47, 48).  Plaintiff's statements that he "did not receive the October 19, 2017 Order to show cause [at Dkt. No. 49]" and that he did "not know about said Order until[] [he] received a letter from the courts filed 12/29/17 [at Dkt. No. 51]," (Dkt. No. 54), still fail to account for the Court's March 2017 Order directing Plaintiff "to indicate whether he intends to serve the remaining Defendants," (Dkt. No. 48).  And although Plaintiff states that he lacks an understanding of the legal system, (Dkt. No. 54), "ignorance of the law, even on the part of a pro se litigant, is not 'good cause' under Rule 4(m), such that an extension of time to effect service would be required," *Tabb v. Rosemary*, No. 12-CV-1520, 2014 WL 240266, at *6 (S.D.N.Y. Jan. 22, 2014) (citation and internal quotation marks omitted).  Nor does the fact that Allen and Best were ultimately served with the Second Amended Complaint in April 2018, (*see* Dkt. Nos. 70, 71), "render[] moot" the violation, for, as noted, "Rule (4m) 'applies equally to defendants who were never served and defendants who were served after the [90-day] period had lapsed.'"  *Nat'l Union*, 1994 WL 463009, at *3 (quoting *Geiger*, 850 F.2d at 332); *see also Ogbo v. N.Y. State Dep't of Tax. & Fin.*, No. insert, 2000 WL 1273840, at *3 (S.D.N.Y. Sept. 6, 2000) ("When a defendant is served late, that service is ineffectual." (citing both *Nat'l Union* and *Geiger*)).

     In sum, this is not a case where Plaintiff can be said to have been unaware that service was not timely effected or where external circumstances interfered with Plaintiff's ability to

13

effect service. In light of these considerations — as well as the facts that Plaintiff failed to respond to the instant Motion and offers no explanation for his failure to serve, (*see* Dkt. No. 83), and that Plaintiff has not communicated with the Court since May 2018, (*see* Dkt. No. 79) — the Court concludes that Plaintiff has clearly failed to demonstrate good cause excusing his failure to timely serve Allen and Best with the Second Amended Complaint. *See Barbosa*, 2018 WL 4625620, at *3 ("Good cause is particularly lacking in this case, where [the] [p]laintiff has never requested leave to properly serve the . . . [d]efendants despite receiving [repeated] notice of his insufficient process."); *Guerrero v. City of New York*, No. 14-CV-8035, 2018 WL 4333985, at *6 (S.D.N.Y. Sept. 11, 2018) (holding that the plaintiff failed to demonstrate good cause because the "[d]efendants raised the issue of [defective] service in" five court filings).

The Court further concludes that granting a discretionary time extension would be unwarranted. To obtain a discretionary extension, "the plaintiff must ordinarily advance some colorable excuse for neglect." *Zapata*, 502 F.3d at 198. No such excuse or other explanation is advanced here. (*See* Dkt. No. 83.)

Moreover, the four factors used to determine whether to grant a discretionary extension, *see DeLuca*, 695 F. Supp. 2d at 66, do not weigh in favor of granting an extension. As to the first factor, the statute of limitations would bar a refiled action. Plaintiff's claims accrued in May 2014. Because § 1983 actions in New York have a three-year limitations period, *see Zapata*, 502 F.3d at 194 n.3, Plaintiff's claims expired in May 2017. (*See* Sept. 2016 Op. 10 ("Plaintiff's § 1983 claims are subject to a three-year statute of limitations . . . that will not expire until May 2017.").) Although this factor generally weighs in favor of a discretionary extension, *see Zapata*, 502 F.3d at 198 (noting that "it is the prejudice to the *plaintiff* that would most naturally be 'assumed' where a dismissal without prejudice would time-bar the action" (emphasis in

14

original)), the factor is "not dispositive," *Brunson-Bedi v. New York*, No. 15-CV-9790, 2018 WL 2084171, at *9 (S.D.N.Y. May 1, 2018) (citation omitted); *see also Arch Ins. Co. v. Goldens Bridge Fire Dep't*, No. 16-CV-9921, 2018 WL 1725225, at *5 (S.D.N.Y. Apr. 6, 2018) ("Courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." (alterations and citations omitted)). Rather, even where the statute of limitations has run, "courts have declined to extend the time to serve" where — as here — "a plaintiff has failed to demonstrate diligence, establish good cause, and/or provide any excuse." *Guerrero*, 2018 WL 4333985, at *6 (citing *Zapata*, 502 F.3d at 199 and *Vaher*, 916 F. Supp. 2d at 421).

As to the second factor, the Court previously noted that, "'while there is no competent evidence to support a conclusion that [Allen or Best] had actual notice of the claims against them, defense counsel . . . has engaged in motion practice on their behalf.'" (Sept. 2016 Op. 10 (quoting *Vaher*, 916 F. Supp. 2d at 421).) The Court further stated that it "cannot identify any material way in which [Defendants' court filings] would have differed" had Allen and Best been served in their individual capacities. (*Id.* at 11.) Defendants' argument — that "[t]he fact that [Defendants] filed a motion on [Allen and Best's] behalf in their official capacities only cannot be deemed a waiver of service or an acknowledgement that they had actual notice," because "[a]n action against an individual in his/her [official] capacity is really an action against the municipality," (Defs.' Mem. 15 (citation omitted) — is nonresponsive. Nevertheless, even assuming Allen and Best had actual notice of the claims against them, their actual notice does not overcome Plaintiff's failure to even "attempt[] to remedy the defect [in service] by asking the district court to extend [his] time to effect personal service." *Bogle-Assegai v. Conn.*, 470 F.3d 498, 508–09 (2d Cir. 2006); *see also Smith v. Bray*, No. 13-CV-7172, 2014 WL 5823073, at *5

15

(S.D.N.Y. Nov. 10, 2014) ("Neither actual notice nor absence of prejudice to the defendant provides an adequate basis for excusing noncompliance with Rule 4(m), unless plaintiff has diligently attempted to complete service." (citation and internal quotation marks omitted)). In short, the second factor does not weigh in favor of a discretionary extension.

The third and fourth factors weigh against a discretionary extension. Defendants did not conceal, or attempt to conceal, the defective service of Allen and Best. To the contrary, the record shows that Defendants repeatedly raised the issue of Plaintiff's defective service after the Court's September 2016 Opinion. (*See* Dkt. Nos. 45, 47, 56.) Moreover, Defendants have been prejudiced by the delay in service, for not only was the initial Complaint filed over four years ago, in December 2014, but Plaintiff has ignored repeated directives from the Court — both prior to and subsequent to the Court's September 2016 Opinion — to ensure proper service. "[E]xtending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on [D]efendants, especially where, as here, both the service period and the statute of limitations period have long since expired." *Barbosa*, 2018 WL 4625620, at *3 (quoting *Vaher*, 916 F. Supp. 2d at 421).

On balance, considering the four factors and the fact that Plaintiff has failed to "advance some colorable excuse for neglect," *Zapata*, 502 F.3d at 198, the Court concludes that a discretionary extension of the time to serve is unwarranted in this case. The Court is, of course, mindful of Plaintiff's pro se status, but "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell*, 980 F. Supp. 2d at 559 (internal quotation marks omitted). The Court is also mindful that the Second Circuit has a "clearly expressed preference that litigation disputes be resolved on the merits." *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 346 (S.D.N.Y. 1996) (citations omitted); *see*

*also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (same); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (same). In this case, however, "'no weighing of the prejudices between the . . . [P]arties can ignore that the situation is the result of . . . [P]laintiff's neglect." *Barbosa*, 2018 WL 4625620, at *4 (quoting *Zapata*, 502 F.3d at 198). Plaintiff made one unsuccessful effort after September 2016 to effect service of the Second Amended Complaint, but did not follow up when it became clear that attempt was unsuccessful, did not request a time extension from the Court, ignored multiple Court Orders to show cause and warnings of possible dismissal, ignored Defendants' filings notifying him of the defect in service, and now offers no colorable excuse for his failure to timely serve. *See Zapata*, 205 F.3d at 198. Therefore, dismissal of Plaintiff's Second Amended Complaint in these circumstances is proper. *See Brunson-Bedi*, 2018 WL 2084171, at *9 (declining to grant discretionary extension, despite "an even split in the factors" in light of the plaintiff's "utter failure to provide an explanation for the extensive delay in service"); *Gibbs v. Imagimed, LLC*, No. 11-CV-2949, 2013 WL 2372265, at *4 (S.D.N.Y. May 30, 2013) (declining to grant discretionary extension, despite split in the factors, because the Plaintiff "made no effort whatsoever to comply with the Rules governing service"); *Nat'l Union*, 1994 WL 463009, at *4 ("For though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger.").

III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.[4] Plaintiff's Second Amended Complaint is dismissed. Dismissal is necessarily with prejudice because three-year

---

[4] The Court need not address Defendants' argument for dismissal under Federal Rule of Civil Procedure 41(b). (Defs.' Mem. 17.) As to Defendants' argument that Plaintiff fails to state a claim of excessive force, (Defs.' Mem. 18), the Court has already held that Plaintiff states an

17

statute of limitations on Plaintiff's claims expired in May 2017, *see Zapata*, 502 F.3d at 194 n.3 ("In section 1983 actions within New York, the applicable limitations period is . . . three years." (citation and internal alterations omitted)), and any amendment to the Second Amended Complaint would, therefore, be "futile," *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016); *see also Brunson-Bedi*, 2018 WL 2084171, at *2 ("Amendment is . . . futile if a plaintiff's claims should be dismissed for improper service which cannot be cured by further amendment of a complaint." (internal alterations, quotation marks, and citation omitted)); *see also Nat'l Union*, 1994 WL 463009, at *7 (dismissing case pursuant to Rule 4(m) even though it would be time-barred if re-filed).

The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

Dated: December 21, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

excessive force claim to survive a motion to dismiss, (*see* Sept. 2016 Op. 17–24.) Defendants have not filed a motion for reconsideration, nor do Defendants now present any new arguments in their one-page discussion of Plaintiff's excessive force claim. Accordingly, the Court declines to revisit its earlier ruling.